**UNITED STATES of America, Appellant,**

v.

**Kenneth Warren PRICE and Cay Denise Price, Appellees.**

**In re Kenneth Warren Price and Cay Denise Price, Debtors/Plaintiffs.**

Civ. A. No. H–98–0558.
Bankruptcy No. 96–50756–H2–7.
Adversary No. 97–4077.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 19, 1998.

---

Carolyn A Taylor, Hughes Watters & Askanase, Houston, TX, for Kenneth Price, debtor.

Kenneth Price, Houston, TX, debtor pro se.

Carolyn A Taylor, Hughes Watters & Askanase, Houston, TX, for Cay Price, debtor.

Cay Price, Houston, TX, debtor pro se.

Nancy Graml, U.S. Attorney's Office, Houston, TX, for USA/IRS, appellant.

## MEMORANDUM OPINION AND ORDER

ATLAS, District Judge.

In this appeal from the United States Bankruptcy Court for the Southern District of Texas, Adversary No. 97–4077, Appellant United States of America, Internal Revenue Service ("IRS") contends that the Bankruptcy Court erred in discharging the 1992 tax debt of Appellees Kenneth Warren and Cay Denise Price ("the debtors").[1] The Court has considered the parties' briefs, the Bankruptcy Court record, all other matters filed in this case, and the relevant authorities. For the reasons stated below, the Court will remand this case to the Bankruptcy Court for further factual findings regarding whether or not equitable tolling is warranted under the applicable provision of the Bankruptcy Code, 11 U.S.C. § 105(a)(a).

## I. FACTUAL BACKGROUND

The facts specifically pertinent to this appeal are as follows. For the taxable year 1992, the debtors reported an adjusted gross income in the amount of $213,547.00. In May 1993, the IRS assessed unpaid income taxes and penalties for the 1992 tax year against the debtors in the amount of $46,-629.00. In June 1993, the IRS and the debtors entered into an installment agreement for payment of the debtors' taxes for the years 1990, 1991, and 1992. There appears to be a disagreement in the current record regarding the terms of that agreement.

In December 1993, the IRS notified the debtors that they were in default of the installment agreement. In June 1994, the debtor-husband filed a bankruptcy petition under Chapter 11 in Case No. 94–43860. That bankruptcy case was dismissed in May 1995 without a plan of reorganization ever being confirmed. The IRS asserts that it took various measures to collect the debtors' 1992 tax debt before and after the period that the 1994 bankruptcy case was pending. The IRS, however, did nothing during the time that bankruptcy case was open.

On November 19, 1996, an IRS revenue officer served a notice of levy on the debtor-wife's wages to collect the debtors' unpaid tax liabilities. The next day, November 20, 1996, the debtors filed the current bankruptcy case, which was assigned to the Honorable Bankruptcy Judge Wesley Steen. The debtors argued that their tax debt was dischargeable because the tax collection priority periods provided for in 11 U.S.C. § 507(a)(8) had already elapsed. The IRS argued, on the other hand, that it was entitled to tolling of the priority periods during the time that the debtor-husband had been under the protection of the bankruptcy laws while his 1994 bankruptcy case was pending and for six months thereafter.

On January 16, 1998, Honorable Bankruptcy Judge William Greendyke entered a judgment in the current adversary action declaring the debtors' 1992 tax debt, as well as their tax debt for 1990 and 1991, to be dischargeable. See Adversary Proceeding Judgment [Bcy. Doc. # 18 Adv. # 97–04077], ¶ 5. The Bankruptcy Court noted that, unlike other Courts of Appeals, the Fifth Circuit prohibits the use of 11 U.S.C. § 108(c) to allow prior bankruptcy proceedings to toll the priority periods provided for in 11 U.S.C.

---

1. The Bankruptcy Court also held that the debtors' 1990 and 1991 taxes were dischargeable, but the IRS does not appeal this ruling. See Appellant's Brief [Doc. # 4], at 1 n. 1.

§ 507(a)(8). *See Matter of Quenzer,* 19 F.3d 163 (5th Cir.1993).[2] The Bankruptcy Court also noted, however, that 11 U.S.C. § 105(a)[3] could be used to allow such tolling where equitable circumstances warrant such relief. Without elaboration, the Bankruptcy Court simply held that:

> [T]he factual circumstances and/or equitable considerations in this case do not warrant such an equitable use of section 105(a). The Court finds that the IRS had sufficient time to pursue the tax debt (983 days).

Adversary Proceeding Judgment, ¶ 4.

In this appeal, the IRS argues that the Bankruptcy Court erred in failing to allow equitable tolling under 11 U.S.C. § 105(a). In support of this argument, the IRS contends that it diligently pursued collection of the debtors' tax liability while they were not under the protection of the bankruptcy laws; that it should not be penalized for not pursuing collection more aggressively but instead for working with the debtors and trusting that they would make good faith efforts to satisfy their liability pursuant to the installment agreement; that, because of the debtor-husband's 1994 bankruptcy case, the IRS did not have the amount of time to collect the debtors' 1992 tax liability envisioned by Congress; and that, notwithstanding the Fifth Circuit's holding that 11 U.S.C. § 108(c) cannot be used to toll priority periods during bankruptcy proceedings, the IRS should receive equitable tolling under 11 U.S.C. § 105(a) in order to close a "loophole" that would otherwise result and would allow tax evaders to avoid liability through filing successive bankruptcy petitions. The IRS cites numerous cases, many from other circuits, in which courts have allowed tolling for the IRS and compares the facts of those cases to the facts presented here.

In response, the debtors paint a different picture of this dispute. They allege facts tending show that they made good faith efforts to fulfill their tax obligations, which they claim arose largely as the result of an unexpected capital gain; that they were unaware that the installment agreement they entered into with the IRS would require a balloon payment after several installments and that they were unable to make such a payment; that they were forced to sell all of their valuable assets in order to satisfy their creditors, including their car and house; that they attempted to sell their house in order to pay their tax liability but that, before it could be sold, their bank foreclosed on the house and they lost their equity in it; that they are not serial bankruptcy filers merely because the debtor-husband filed one previous bankruptcy petition, but that the only reason they were unable to resolve their debt problems through that earlier case was that their mortgagor would not approve the proposed reorganization plan; that they properly invoked the bankruptcy laws in order to relieve themselves of their unmanageable tax liability; and that the IRS is not entitled to equitable tolling in this case because it had ample opportunity to pursue collection of their tax debt while they were not in bankruptcy but

---

**2.** Section 108(c) states that:

> [I]f applicable *nonbankruptcy* law, an order entered in a *nonbankruptcy* proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court *other than a bankruptcy court* on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of ... the end of such period, including any suspension of such period occurring on or after the commencement of the case; or ... 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c) (emphasis added). In *Quenzer,* 19 F.3d at 165, the Fifth Circuit adopted a plain language interpretation of this provision in holding that this statutory suspension does not apply to prior bankruptcy proceedings.

**3.** Section 108(a), the general provision regarding the power of a court in a bankruptcy proceeding, provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 108(a).

that the IRS failed to pursue collection of the obligation diligently.

## II. *STANDARD OF REVIEW*

When reviewing a bankruptcy court's decision, a district court functions as an appellate court and applies the standard of review generally applied in federal courts of appeals. *See Matter of Crowell,* 138 F.3d 1031, 1033 (5th Cir.1998); *Matter of Webb,* 954 F.2d 1102, 1103–04 (5th Cir.1992). Accordingly, the Bankruptcy Court's factual determinations are subject to the "clearly erroneous" standard of review, and the Bankruptcy Court's conclusions of law are reviewed *de novo. See Matter of Johnson,* 146 F.3d 252, 254 (5th Cir.1998).

## III. *DISCUSSION*

In this case, the Bankruptcy Court entered a brief judgment which combined "Findings of Fact and Conclusions of Law" but—other than tersely noting that the IRS had 983 days to pursue the debtors' tax debt—did not provide specific explanation of what facts it used as the basis for its finding and conclusion that equitable tolling is not warranted in this case. Although this Court always will give deference to the Bankruptcy Court's factual findings, without further elaboration by the Bankruptcy Court of its reasoning and identification of the facts on which it relied, this Court is unable to evaluate whether such findings should be upheld or are instead "clearly erroneous."

This Court is bound by the Fifth Circuit's observation in *Quenzer,* 19 F.3d at 165, that "[e]quitable considerations are largely fact-driven," and the exercise of equitable tolling powers under 11 U.S.C. § 105(a) requires "[f]ull development and examination of the facts and the relative positions of the parties" by the trial court, in this case the Bankruptcy Court. The determination of such equities is not suited for appellate review without these factual findings. *See id.*

In a similar case to the one at bar, *In re Miller,* 199 B.R. 631 (Bankr.S.D.Tex.1996), Judge Greendyke held that equitable tolling under 11 U.S.C. § 105(a) was warranted in order to allow priority status for the IRS to pursue a tax debt incurred by debtors who filed multiple bankruptcy petitions in an attempt to thwart the IRS's collection efforts. In that case, however, Judge Greendyke made express findings that the debtors had embarked upon a "scheme" to bypass the bankruptcy code's non-dischargeability provisions for tax liabilities. *See id.* at 634. Because of this previous opinion, the Court presumes that, in the case at bar, Judge Greendyke undertook a similar analysis and found that the equitable circumstances favoring tolling in *In re Miller* are not present here. However, without the benefit of such express findings and fact-based reasoning, this Court has difficulty understanding how the Bankruptcy Court weighed the equities in this fact-laden record.

Accordingly, the Court must remand this case to the Bankruptcy Court for factual findings addressing more directly (i) the parties' arguments regarding the reasonableness of the IRS's delay in pursuing the debtors' 1992 tax liability and the genuineness of the debtors' attempts to satisfy their tax obligations, and (ii) based upon those findings, the applicability of equitable tolling under 11 U.S.C. § 105(a).

## IV. *CONCLUSION*

For the foregoing reasons, this case is **REMANDED** to the Bankruptcy Court for further factual findings in accordance with this Opinion.