**In re Robert K. BAIR and Pamela W. Bair, Debtors.**

**Robert K. Bair and Pamela W. Bair, Plaintiffs,**

**v.**

**United States of America (Internal Revenue Service), Defendant.**

**Bankruptcy No. 98–51875–RBK.**
**Adversary No. 98–5071–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 9, 1999.

John M. Tutt, San Antonio, TX, for debtors/plaintiffs, Robert K. Bair and Pamela W. Bair.

Manuel P. Lena, Jr., Dallas, TX, for defendant, the United States of America (Internal Revenue Service).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RONALD B. KING, Bankruptcy Judge.

In connection with the Judgment rendered in this adversary proceeding, the Court hereby makes the following Findings of Fact and Conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

### FINDINGS OF FACT

1. Plaintiffs Robert and Pamela Bair ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 14, 1998, in the Western District of Texas. Prior to this case, the Debtors had filed for Chapter 13 protection in the Northern District of Texas on November 18, 1992. The prior bankruptcy case was dismissed on October 3, 1997, based upon the Debtors' inability to make plan payments. A period of 193 days elapsed between the Debtors' Chapter 13 dismissal and Chapter 7 filing. This Court entered an order of discharge in the Chapter 7 case on August 9, 1998.

2. The Internal Revenue Service of the United States of America ("IRS") is the Defendant in this adversary proceeding and principal unsecured creditor in the Debtors' Chapter 7 case. The IRS has asserted nondischargeable, priority claims pursuant to 11 U.S.C. §§ 507(a)(8), 523(a)(1) (1994) resulting from the unpaid balance of income taxes due for the calendar years 1988, 1989, 1990, 1992, and 1993 and the accrued interest thereon. Although having made almost $15,000 in partial payments toward the unpaid balance during their Chapter 13 case, the Debtors still owed close to $40,000 to the United States as of November 2, 1998. The IRS admits that penalties associated with such years are dischargeable. The dischargeability of taxes for the years 1987 and 1991 are not at issue in this adversary proceeding; however, the Debtors failed to file a return for the 1987 taxes.

3. The Debtors initiated this adversary proceeding to determine the dischargeability of the taxes owing for the years 1988, 1989, 1990, 1992, and 1993. Having duly scheduled these tax debts in their Chapter 7 case, they allege that the IRS claims are dischargeable because the statutory limitations periods described in sections 507(a)(8) and 523(a)(1) had already passed when they filed for Chapter 7 protection. Specifically, they claim that the taxes can be discharged for the following reasons: 1) the tax returns were last due after three years before the date of the filing of the Chapter 7 petition; 2) the taxes were not assessed within 240 days before the petition filing date; and 3) any late-filed tax returns were not filed within two years of the petition filing date. These periods will be referred to as the three year, 240 day, and two year limitations periods, respectively.

4. The IRS requests that the Court exercise its authority under 11 U.S.C. § 105(a) to equitably toll the three year and 240 day limitations periods of 11 U.S.C. §§ 507(a)(8) and 523(a)(1) (1994) for the 1,780 day period of the Debtors' Chapter 13 bankruptcy case and for a six month period after the stay was lifted in accord with 26 U.S.C. § 6503(b) and (h) (1994). The automatic stay imposed by the Debtors' Chapter 13 case pursuant to 11 U.S.C. § 362(a) (1994) prevented the IRS from pursuing any efforts to collect the tax debts during the pendency of that bankruptcy.

5. After the stay terminated on October 3, 1997 with the dismissal of the Chapter 13 case, the IRS initiated standard collection procedures for the tax claims in question. On December 29, 1997, the IRS mailed a deficiency notice to Debtors. On February 2, 1998, the IRS assigned the tax claims to automated collections. Finally, the IRS filed tax liens on March 12, 1998. The automatic stay imposed by the filing of the Debtors' Chapter 7 petition on April 14, 1998, prevented any further collection efforts. As with the Chapter 13 case, the IRS has not attempted to collect the unpaid balance since the filing of the ongoing Chapter 7 case. At no time has either party presented an offer in compromise with respect to these taxes, and the IRS did not file a proof of claim in the Chapter 7 no asset case.

6. During the Chapter 13 and Chapter 7 bankruptcies, the Debtors' employment resulted in the following adjusted gross income (after business expenses): $30,395 in 1992; $28,906 in 1993; $42,668 in 1994; $60,701 in 1995; $70,765 in 1996; and $24,036 in 1997. The Debtors continued to build postpetition tax liabilities during the Chapter 13 case with the filing of returns for tax years 1992 and 1993 on April 24, 1995. They only made two payments of $175 each outside of their plan toward these liabilities while under Chapter 13 protection.

7. The chart below summarizes relevant events and dates for the tax years in question in this adversary proceeding:

|  | Yr. 1988 | Yr. 1989 | Yr. 1990 | Yr. 1992 | Yr. 1993 |
|---|---|---|---|---|---|
| Return Due | 04/15/89 | 08/15/90 | 10/15/91 | 10/15/93 | 10/15/94 |
| Return Filed | 09/08/92 | 04/28/92 | 09/08/92 | 03/27/95 | 03/30/95 |
| Assessed by IRS | 11/02/92 | 06/01/92 | 10/12/92 | 04/24/95 | 04/24/95 |

| Chapter 13 Filed | Chapter 13 Dismissed | Duration of Chapter 13 Case |
|---|---|---|
| November 18, 1992 | October 3, 1997 | 1,780 days |

| Chapter 7 Filed | Chapter 7 Discharge | Between Bankruptcies |
|---|---|---|
| May 14, 1998 | August 9, 1998 | 193 days |

If the Court does not equitably toll the three year, two year, and 240 day limitations periods, the Debtors could discharge their tax liabilities. However, tolling the limitations periods for the 1,780 days of the earlier bankruptcy would allow the IRS to hold nondischargeable, priority claims since the 240 day period would not have run for the 1988 tax claims and the three year period would not have run for the 1989, 1990, 1992, and 1993 tax claims.

## CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a), 1334 (1994) and the Standing Orders of Reference of the district court. The Court may enter a final order in this core proceeding. 28 U.S.C. § 157(b)(1), (b)(2)(I) (1994).

2. Venue is proper in this Court under 28 U.S.C. § 1409 (1994).

### B. Dischargeability of Income Taxes

This adversary proceeding requires the Court to determine if the Debtors may discharge federal income taxes owing to the United States for the years 1988, 1989, 1990, 1992, and 1993 and the accrued interest thereon. The Bankruptcy Code assigns a high priority to the collection of federal income taxes in sections 507(a)(8)(A) and 523(a)(1). The former section grants priority status to IRS claims for income taxes "for a taxable year ending on or before the date of the filing of the petition for which a return if required, is last due, including extensions, after three years before the date of the filing of the petition" and those "assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made with 240 days after such assessment was pending, before the date of the filing of the petition." 11 U.S.C. § 507(a)(8)(A)(i), (a)(8)(A)(ii) (1994). As a corollary, the Bankruptcy Code treats the following as exceptions to section 727 discharges: tax debts specified in section 507(a)(8) and those related to tax returns filed both late and after two years before the date of the filing of the petition 11 U.S.C. § 523(a)(1)(A)(i), (a)(1)(B)(ii) (1994). The

accrued interest on nondischargeable tax debt is likewise nondischargeable. *Johnson v. IRS (In re Johnson)*, 146 F.3d 252, 260 (5th Cir.1998); *Hardee v. IRS (In re Hardee)*, 137 F.3d, 337, 342 (5th Cir.1998).

The issue of the dischargeability of the Debtors' tax debts depends upon whether the IRS claims satisfy the three year, 240 day, or two year limitations periods mentioned in sections 507(a)(8) and 523(a)(1). At first glance, the disputed tax debts would appear to clearly fall outside the limitations periods set in place by the 1998 filing. The last filing deadline for the tax years from 1988 to 1993 was October 15, 1994, a date easily outside the three year limitations period. The last assessment date for these taxes was April 24, 1995, a date far beyond the 240 day period. Although having filed each of these returns late, the Debtors did not file a single tax return within two years of the 1998 bankruptcy petition since the last return bore a March 1995 postmark. Upon simple application of sections 507(a)(8) and 523(a)(1) to these facts, the Debtors would be entitled to a discharge of the unpaid taxes due to the passage of time during which the IRS could not collect the taxes, a result curiously at odds with the preferential treatment afforded to tax claims by the Bankruptcy Code.

## C. Equitable Tolling of Limitations Periods

A tolling of the three year and 240 day limitations periods during the pendency of the Debtors' Chapter 13 case, however, would give the IRS's tax claim nondischargeable, priority status. The Court recognizes that the Internal Revenue Code tolls the running of the period of limitations on collections during times when a taxpayer is under court control or bankruptcy protection plus six months thereafter. 26 U.S.C. § 6503(b), (h) (1994). The Bankruptcy Code, although offering priority to tax claims, does not expressly provide such tolling but can afford an equitable remedy through the broad discretionary powers granted to the Court by section 105(a). Section 105 provides that the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (1994). The party urging equitable tolling, however, must first make a specific and affirmative request for such relief. *United States v. Gilmore (In re Gilmore)*, 226 B.R. 567, 575–76 (E.D.Tex.1998).

Courts have utilized section 105(a) to equitably toll the three year and 240 day limitations periods for tax claims during the pendency of a debtor's previous bankruptcy case. *In re Richards*, 994 F.2d 763, 765–66 (10th Cir.1993) (tolling 240 day period); *Ramos v. IRS (In re Ramos)*, 208 B.R. 655, 658 (W.D.Tex.1996) (tolling both three year and 240 day periods); *In re Moss*, 216 B.R. 556, 558 (Bankr.E.D.Tex.1997) (tolling three year period). Some courts have further extended the tolling for six months after the close of the earlier bankruptcy, but others have expressly refused to grant the additional time. *Miller v. IRS (In re Miller)*, 199 B.R. 631, 634 (Bankr.S.D.Tex.1996) (tolling 240 day period for pendency of prior bankruptcy and for six months after case dismissed); *In re Avila*, 228 B.R. 63, 68 (Bankr.D.Mass.1999) (finding no reason to expand tolling of three year period for an additional six months). Public policy concerns and simple notions of fairness suggest that the Bankruptcy Code "was not promulgated as a means to thwart creditors, such as the IRS, by the filing of successive petitions" and "was not designed to allow debtors to create a scheme of bypassing the [C]ode's non-dischargeability provisions by filing a petition, letting the priority period expire, dismiss their case, and refile again (in order to discharge the taxes), thereby making themselves unreachable by the IRS." *Miller*, 199 B.R. at 634. By assigning nondischargeable, priority status to income tax claims in sections 507(a)(8) and 523(a)(1), Congress apparently intended to provide

the government full and unimpeded periods to collect income taxes so as to avoid shifting burdens from lost revenues to other taxpayers. *Moss,* 216 B.R. at 557.

■■■ Whether the Court should exercise its equitable authority to toll the limitations is a fact-driven consideration. *Quenzer v. United States (In re Quenzer),* 19 F.3d 163, 165 (5th Cir.1993). The Fifth Circuit has noted that the " 'essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.' " *Id.* (quoting *Hecht Co. v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944)). A proper exercise of the Court's equitable powers requires "full development and examination of the facts and the relative positions of the parties." *Quenzer,* 19 F.3d at 165. The IRS has the burden of proof to show that the Court should invoke section 105(a) to equitably toll the limitations periods. *Moss,* 216 B.R. at 558; *Clark v. Internal Revenue Service (In re Clark),* 184 B.R. 728, 730 (Bankr.N.D.Tex.1995).

■■■ A review of cases addressing the dischargeability of tax debts reveals several factors that have influenced courts to exercise the equitable tolling authority pursuant to section 105(a). First and foremost, the filing of successive bankruptcy petitions prevented the IRS from collecting the taxes within the limitations periods. *Richards,* 994 F.2d at 766 (Chapter 13 dismissal followed by second Chapter 13 filing); *Ramos,* 208 B.R. at 657 (Chapter 13 dismissal followed by second Chapter 13 filing); *Miller,* 199 B.R. at 632–34 (Chapter 13 dismissal followed by a Chapter 7 filing); *Clark,* 184 B.R. at 730 (five separate filings under Chapter 7 or 13). Between bankruptcies during which no automatic stay remained in effect, the IRS commenced regular collection procedures. *Moss,* 216 B.R. at 558; *Clark,* 184 B.R. at 731. Often, the debtor's filing of a bankruptcy petition followed shortly after the IRS commenced collection efforts. *Miller,* 199 B.R. at 634 (fifteen days after issuance of notice of intent to levy); *Clark,* 184 B.R. at 731 (four out of five bankruptcies filed shortly after receipt of IRS collection notice or after IRS officer had case). Other practices viewed to warrant equitable tolling involved the debtor's lack of responsibility regarding tax obligations or failure to make payments to the IRS during prior bankruptcies even while employed. *Miller,* 199 B.R. at 634; *Clark,* 184 B.R. at 731–32. Of course, neither should the IRS exhibit inequitable conduct. *See Gilmore,* 226 B.R. at 577 (denying equitable tolling where IRS acted arrogantly by assuming that tolling would apply and hounded debtor with collection efforts for previously discharged taxes).

■■■ This Court has previously addressed the issue of equitable tolling regarding tax claims under circumstances similar to the present case. *Ramos,* 208 B.R. at 655. The debtors in *Ramos* had initiated a Chapter 13 bankruptcy that involved a $54,291 tax claim by the IRS. The case was dismissed almost five years after filing, but the debtors filed another Chapter 13 petition only 44 days thereafter. Due to the lengthy period involved in the first bankruptcy, the three year and 240 day limitations periods had run on most of the IRS claims, leaving only $1,317 of the unpaid $54,291 as a priority claim. At a hearing on the debtors' objection to the proof of claim of the IRS, this Court overruled the objection and equitably tolled the periods pursuant to section 105(a) because the IRS had been stayed from collection efforts during the previous bankruptcy. *Id.* at 657. On appeal, the district court affirmed this Court and upheld the equitable tolling of the three year and 240 day periods for the time spent by the debtors in the earlier bankruptcy. *Id.* at 658.

■■■ The facts and relative positions of the parties in this case similarly warrant the Court's equitable tolling of the limitations periods found in section 507(a)(8)(A). First, the IRS has not enjoyed an unimpeded three years in which to collect the

majority of the taxes owing due to the automatic stay imposed by the earlier Chapter 13 bankruptcy that lasted 1,780 days, a period close to five years. The stay also prevented the IRS from utilizing the 240 day grace period for tax assessment of the 1988 taxes granted by section 507(a)(8)(A)(ii). *See Moss*, 216 B.R. at 557. If the Debtors had not filed a second bankruptcy 193 days after dismissal of the Chapter 13 case, the IRS would have been able to collect the taxes due within the limitations periods and without having to confront the dischargeability issue. *Ramos*, 208 B.R. at 656; *Miller*, 199 B.R. at 632–33; *Clark*, 184 B.R. at 729. This Court will not allow the Bankruptcy Code to be utilized as an implement to evade creditors simply by the timing of successive bankruptcy filings. *Miller*, 199 B.R. at 634.

Second, the IRS has acted appropriately in its collection efforts. The agency fully honored the automatic stay by not attempting to collect the taxes during the periods of the Chapter 13 and Chapter 7 bankruptcies. When the Chapter 13 case was dismissed, the IRS initiated standard collection procedures by mailing deficiency notices to the Debtors, assigning the case to automated collections, and finally filing tax liens. *Moss*, 216 B.R. at 558; *Clark*, 184 B.R. at 731. In this adversary proceeding, the IRS specifically and affirmatively requested in its pleadings and at trial that the Court exercise its equitable authority pursuant to section 105(a) to toll the limitations periods of section 507(a)(8)(A). *Gilmore*, 226 B.R. at 575–76. Although the IRS did not file a proof of claim in the Chapter 7 case, it is of little consequence given the no asset nature of the case and the fact that nondischargeable claims survive the order of discharge. The IRS's actions are not the type of arrogant or reprehensible conduct which would weigh against equitable tolling.

Finally, the Debtors have engaged in conduct which supports equitable tolling under the circumstances. The Debtors

likely filed the Chapter 7 petition primarily for purposes of tax avoidance. The IRS was their principal unsecured creditor in the Chapter 7 case since only partial payments toward the tax liabilities were made by the Debtors during their Chapter 13 case. The Debtors' filing occurred about one month after the IRS had filed tax liens. *Miller*, 199 B.R. at 634; *Clark*, 184 B.R. at 731. Additionally, a pattern of irresponsibility marked the Debtors' handling of their tax liabilities. The Debtors filed late returns for all of the disputed taxes and did not even file a return for 1987. *Miller*, 199 B.R. at 634. Even though the Debtors had reportable income throughout their Chapter 13 case, they continued to amass postpetition tax liabilities for the years 1992 and 1993 and made minimal payments toward these debts. *Clark*, 184 B.R. at 731–32. Although the Debtors do not appear to have acted egregiously or maliciously in handling their tax burdens, the Court views the Debtors' disregard for their tax obligations as inequitable conduct when compared with the earnest efforts of the IRS to collect the taxes in question.

After reviewing the evidence presented by both parties and weighing the equities, the Court finds that the IRS has met its burden to prove that the circumstances of this case warrant the exercise of the Court's equitable powers pursuant to section 105(a). *Quenzer*, 19 F.3d at 165; *Moss*, 216 B.R. at 558; *Clark*, 184 B.R. at 730. In crafting a remedy in equity, the Court shall toll the limitations periods of section 507(a)(8) for the pendency of the Debtors' earlier bankruptcy case. *Miller*, 199 B.R. at 634; 26 U.S.C. § 6503(b), (h) (1994). This tolling will endow the claims of the IRS with nondischargeable, priority status because the 1988 liabilities will fall within the 240 day period and those for 1989, 1990, 1992, and 1993 will meet the deadlines of the three year period. The Court finds no reason to extend the tolling of the limitations periods for six months after the dismissal of the earlier bankrupt-

cy since this extension is not necessary to preserve the tax claims' nondischargeability and the IRS has not presented any evidence demonstrating the need for this additional time. *See Avila,* 228 B.R. 63, 68. The accrued interest on those tax debts shall likewise be nondischargeable. *Johnson,* 146 F.3d at 260; *Hardee,* 137 F.3d at 342. To conclude otherwise would allow the Debtors to circumvent tax liabilities for which they alone are responsible and frustrate the intent of Congress as codified in Titles 11 and 26.

## D. Conclusion

1. After consideration of the totality of the circumstances in this case, the Court exercises its authority under 11 U.S.C. § 105(a) to equitably toll the limitations periods of 11 U.S.C. § 507(a)(8)(A)(i), (a)(8)(A)(ii) for the 1,780 day period of the Debtors' Chapter 13 bankruptcy.

2. Accordingly, the IRS holds nondischargeable, priority tax claims for income taxes owing from the years of 1988, 1989, 1990, 1992, and 1993 and the accrued interest thereon pursuant to 11 U.S.C. §§ 507(a)(8)(A), 523(a)(1) (1994).

3. Any Finding of Fact which should more appropriately be characterized as a Conclusion of Law shall be considered a Conclusion of Law herein. Similarly, any Conclusion of Law which should more appropriately be characterized as a Finding of Fact shall be considered a Finding of Fact herein.